## BUILLIARD v. NEW ORLEANS TERMINAL CO.

### No. 16128.

Court of Appeal of Louisiana. Orleans.

May 31, 1937.

Monroe & Lemann and Walter J. Suthon, Jr., all of New Orleans, for appellant.

Edward M. Heath, of New Orleans, for appellee.

McCALEB, Judge.

A full discussion of the facts of this case and the law applicable thereto will be found in our previous decision in 166 So. 640, 645. When the matter was first presented, we reversed the judgment of the district court and remanded the cause for a new trial on the ground that the district judge was in error in not admitting into

evidence a certain record book which was offered by the defendant for the purpose of contradicting certain statements made by plaintiff and his witnesses.

We also decided that the defendant had tacitly granted a license to plaintiff to walk over its railroad bridge; that, notwithstanding the general rule that an owner does not owe his licensee any duty of care, other than to refrain from willfully or wantonly injuring him, under a well-established exception to the general rule, the defendant was charged with a duty of ordinary care to see that the bridge was not raised while the plaintiff was upon it.

Neither plaintiff nor defendant was satisfied with our judgment and they applied to the Supreme Court for writs of review. Both applications were granted. The Supreme Court held that we were in error in remanding the case and in finding that the record book offered by the defendant at the trial below was admissible in evidence and that we should have rendered judgment upon the facts contained in the record. See 185 La. 924, 171 So. 78. Our decree was accordingly reversed and the case sent back to us for a decision on the facts.

The opinion of the Supreme Court is silent with respect to the writ granted to the defendant. The court's failure to comment upon the propriety of our ruling, concerning the legal relationship between plaintiff and defendant and the resultant duty of care owed by the defendant to plaintiff, would seem to indicate that it is in accord with the conclusion previously reached by us on this question, because the point was squarely presented to it in defendant's application and brief, and, if the contention made had been sound, there would have been no reason to remand the case to us for consideration upon the merits.

In our first opinion, we said:

"We have already observed that, if the plaintiff was on the bridge and the defendant raised it without warning him, liability would ensue, provided that the plaintiff was not contributorily negligent. But the evidence presented on this point by the plaintiff is in direct conflict with the evidence of the defendant."

It will be seen from the foregoing that we have passed upon the questions of law involved in the case. Therefore, the only matters left for determination are two questions of fact: (1) Was the plaintiff on the bridge at the time it was raised; (2) if so, was he guilty of contributory negligence in jumping off the rising end of the bridge? Respecting these questions, we also stated that:

"Plaintiff and his witnesses claim that he was upon the bridge when it started to rise without warning. Defendant's witnesses assert that they never saw the plaintiff and were without notice of the accident. They also positively state that because of knowledge previously acquired that ERA workmen were using the bridge it was an unvaried practice for them to see that no one was upon the bridge before opening it. If these statements are true, the defendant has discharged its duty to the plaintiff. With the testimony in such state of contrast, the jury, by vote of 9 to 3, chose to believe plaintiff and his witnesses."

We have reviewed the transcript, in accordance with the instructions of the Supreme Court, and find that the plaintiff and his witnesses have testified to a positive state of facts. They assert that, while he was on the bridge, it started to rise and that no warning was given by defendant's employees. The defendant's witnesses have merely testified to negative facts—that is—they did not know of the plaintiff's presence on the bridge and they never raise the bridge when any one is upon it. The statements of the plaintiff and his witnesses are unimpeached and we cannot say that the jury committed manifest error in accepting their assertions as genuine.

We are told by counsel for the defendant that plaintiff's evidence is in discord with the physical facts and that, for this reason, the jury was obviously wrong in believing it. While it does seem strange that plaintiff and his witnesses, traversing this bridge twice a day for a period of approximately three months, did not see or hear the bridge raised at any time before the accident, it is possible that such was the case. Moreover, since the Supreme Court has held that the record book of the defendant (which showed the frequency of the raising and closing of the bridge) is not admissible, we have no evidence in the record showing this fact, other than the testimony of one of defendant's bridge tenders who said the bridge was raised for a good many vessels

every day. Even if it is true that the bridge was frequently opened, it is not entirely inconceivable (as we have stated before) that the plaintiff and his witnesses did not see it when it was in that position.

■ The jury saw and heard the witnesses testify and believed the story of the plaintiff. The trial judge also saw and heard the witnesses and approved the verdict in favor of plaintiff when he refused a new trial. As we have ofttimes said, we will not disturb the findings of a jury or judge on questions of fact, in the absence of salient mistake in their appreciation of the testimony presented.

■ Being of the opinion that the plaintiff has proved the negligence of defendant by a preponderance of evidence, the only point which remains for discussion, is whether the plaintiff was contributorily negligent in jumping off the rising end of the bridge. When the bridge started to rise, plaintiff, for the first time, realized that he was in danger of life and limb. Thus, an emergency was created by the hand of the defendant, which required the plaintiff to act in order to save himself. In his dilemma, he jumped off the rising end of the bridge. It is undoubtedly true, as argued for by counsel for defendant, that, if the plaintiff had retraced his steps, he would have found refuge at the stationary end of the bridge. But it must be remembered that plaintiff is an ignorant negro, and the fact that he did not take the best course in caring for his own safety should not be adjudged against him, in view of the serious predicament confronting him. We therefore hold that he was not at fault in jumping off the rising end of the bridge.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.

JANVIER, Judge (dissenting).

When I consider the very slow speed at which this bridge is raised, the short distance across, the noise made by the setting of the many levers preparatory to the raising of the bridge, and the time consumed in setting those levers, I conclude that plaintiff, when he walked upon the bridge, must have been well aware of the fact that it was about to be raised, if, in fact, it had not already commenced to rise. But, even if he stepped upon it a few seconds before it commenced to rise, he could easily have turned back had he not feared that he would not reach the other side in time to ride home upon the truck which was waiting across the bayou.

He was not confronted with a dangerous emergency, but only with the fact that he might lose a ride home.

He ran across the bridge deliberately and with full knowledge of the fact that it was rising, when, as a matter of fact, he could easily have turned back and safely retraced his steps. There was nothing in his mental capacity to increase in his mind the hazard. He was as well able to realize the danger of that situation as would have been the most intelligent and most highly educated person; in fact, probably better able.

I respectfully dissent.